1  LUCAS VALLEY LAW
   MARK K. de LANGIS (SBN 190083)
2  2110 Elderberry Lane
   San Rafael, California 94903
3  Telephone: (415) 472-3892
   Facsimile: (415) 472-3977
4  mdelangis@lucasvalleylaw.com

5  Attorneys for Petitioners
   AMERICAN PRESIDENT LINES, LTD. and
6  APL CO. Pte., LTD.

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11

12

13  In the Matter of the Arbitration between          No. CV 07-6048 JL

14
    AMERICAN PRESIDENT LINES, LTD., a
15  corporation, and APL CO. Pte., LTD., a            PETITION FOR ORDER CONFIRMING
    corporation,                                      AWARD OF ARBITRATOR
16
                    Petitioners,                      [9 U.S.C. section 9]
17
           v.
18

19  J.M.C. TRANSPORT CORPORATION, a
    corporation,
20
                    Respondent.
21

22

23

24          Petitioners AMERICAN PRESIDENT LINES, LTD. and APL CO. Pte., LTD.

25  (collectively "APL") respectfully allege:

26

1    1.    Petitioner American President Lines, Ltd. now is, and at all times herein
2    mentioned was, a corporation duly organized and existing under the laws of the State of
3    Delaware, with its principal place of business in the City of Oakland, California.
4    2.    Petitioner APL Co. Pte., Ltd. now is, and at all times herein mentioned was, a
5    corporation duly organized and existing under the laws of Singapore, registered to do business in
6    the State of California.
7    3.    On information and belief, respondent J.M.C. Transport Corporation ("J.M.C."),
8    was at all material times mentioned herein, a limited liability company duly organized and
9    existing under the laws of the State of California.
10
11                          **JURISDICTION**
12    4.    The jurisdiction of this Court is invoked under Title 9, United States Code, and
13    particularly Section 9 thereof, and under Title 28, United States Code, section 1333, as a case
14    within the admiralty and maritime jurisdiction of this Court.
15
16                          **BACKGROUND**
17    5.    In or around October 2003, petitioners and respondent entered into a written
18    maritime contract for the shipment of respondent's cargo by sea from the United States to
19    Taiwan.  (A true and correct copy of the applicable Service Contract No. WB03/0329 is attached
20    hereto, marked Exhibit "A" and is made a part hereof.)
21    6.    Service Contract WB03/0329 evidences a series of transactions involving
22    international maritime commerce, as is shown by its express terms.
23    7.    APL on the one hand, and J.M.C. on the other, agreed in the contract, at section 4,
24    to resolve any dispute arising under the contract by submitting the dispute to arbitration in San
25    Francisco,  California, before an arbitrator of the American Arbitration Association.  In addition,
26    APL and J.M.C. agreed that the decision of the arbitrator "shall be final, binding and not subject

PETITION FOR ORDER CONFIRMING AWARD OF ARBITRATOR

1     to further review." (Service Contract, at Ex. A, § 4(a), attached hereto.)

2         8.     The contract, at Section 4, further provides that the decision of the arbitrator may

3     be enforced by any court, tribunal, or other forum as may properly assert jurisdiction, and that

4     the parties expressly consent and agree that the United States District Court for the Northern

5     District of California shall have personal jurisdiction over the parties to the contract.  (Service

6     Contract, at Ex. A, § 4(b), attached hereto.)

7         9.     On March 2, 2005, APL invoiced J.M.C. the sum of $8,750, which was then, and

8     still is, due pursuant to the terms of Service Contract Number WB03/0329.  (A true and correct

9     copy of the March 2, 2005 invoice is attached hereto as Exhibit "B," and made a part hereof.)

10

11                          **THE ARBITRATION**

12         10.    Pursuant to the arbitration agreement, as detailed in section 4 of the above-

13     described contract, APL initiated arbitration proceedings with the American Arbitration

14     Association ("AAA") on June 7, 2007.

15         11.    Following due notice to both APL and J.M.C., including preliminary hearings by

16     telephone, an arbitration (via documents per the AAA rules and by order of the arbitrator) was

17     duly conducted in September 2007, before the AAA appointed arbitrator, Matthew J. Geyer, Esq.

18         12.    On October 16, 2007, the arbitrator awarded petitioners American President

19     Lines, Ltd. and APL Co. Pte., Ltd. the principal amount of $8,750, attorneys' fees of $2,160 and

20     costs of $1,700, for a total award of $12,610.  (A true and correct copy of the "AWARD," dated

21     October 16, 2007, is attached hereto as Exhibit "C," and made a part hereof.)

22         13.    J.M.C. has failed to satisfy the arbitration award in the time since it was made.

23     Therefore, a judgment on the arbitration award is needed to permit APL to enforce it.

24         14.    This petition is authorized by the terms of the arbitration clause within the

25     maritime contract, Section 9 of the Federal Arbitration Act, and the award itself.

26

1          WHEREFORE petitioners AMERICAN PRESIDENT LINES, LTD. and APL CO. Pte.,

2    LTD. pray as follows:

3        1.      That an order of this Court be made confirming the Award of the arbitrator for

4              the amount of $12,610;

5        2.      That judgment be entered in conformity therewith, for the amount owing of

6              $12,610, pursuant to the Award of the arbitrator;

7        3.      That APL be allowed costs incurred herein;

8        4.      The Court award APL prejudgment and post-judgment interest on all sums as

9              provided by law; and

10       5.      That APL be awarded such other and further relief as may be proper.

11

12   DATED:  November 30, 2007

13

14                       By:  /s/                       

15                             Mark K. de Langis

                              Attorney for Petitioner

16                 AMERICAN PRESIDENT LINES, LTD and

                           APL CO. Pte., LTD.

17

18

19

20

21

22

23

24

25

26

PETITION FOR ORDER CONFIRMING AWARD OF ARBITRATOR

# EXHIBIT A

**SERVICE CONTRACT NO. WB03/0329**

ESSENTIAL TERMS PUBLICATION:
ESSENTIAL TERMS NO.

SERVICE CONTRACT TARIFF FMC NO.20
ET. NO. WB03/0329
TARIFFS OF GENERAL APPLICABILITY:
APL FMC NO. AP1

This Service Contract ("Contract") is made and concluded by and between APL, ("Carrier") and Merchant and each of its affiliates identified herein (each and collectively referred to herein as "Merchant"), whereby the parties mutually agree as set forth in pages attached hereto.

In the event this Contract is signed on behalf of the Merchant by an agent, the undersigned agent warrants that 1) it is authorized and empowered by the Merchant to negotiate and enter into this Contract on behalf of the Merchant, 2) it is authorized and empowered to represent and act on behalf of the Merchant in respect to all activities undertaken within the scope of this Contract or related thereto, including the booking, carriage and handling of cargo and payment of freight and other charges, and 3) all representations made in this Contract regarding the Merchant's status as a shipper are true and correct.

Carrier

(Signature)    Date: 10/31/03
Name: Bruce Joder
Title: Manager, Americas Reefer Trade

APL Co. Pte Ltd. In its Individual Capacity and
as Agent for American President Lines Ltd.
1111 Broadway
Oakland, CA, 94607

Merchant

(Signature)    Date: 10/30/03
Name: Yimi Ma
Title: Export Manager

JMC Transport Corp.
811 W. Arbor Vitae St.
1st Floor
Inglewood, CA, 90301
Tel No: (310) 216-2069
Fax No: (310) 216-2703  632 - 6782
Email Address: jmclax@pacbell.net
Customer Number: 374528

Affiliates of Merchant covered by this contract:
None

### Shipper Certification

Pursuant to FMC regulation 46 C.F.R. 530.6, Merchant, by execution of this Contract, certifies its status and that of all its affiliates authorized to utilize this contract as:

(1) _____ THE OWNER OF THE CARGO
(2) _____ MEMBER OF A SHIPPERS' ASSOCIATION
(3) _X_ NON-VESSEL-OPERATING COMMON CARRIER
(4) _____ OTHER (Specify:_____)

If status is #2 above, Merchant certifies that any named members in this contract who are NVOCCs are so identified and that they have tariff(s) and bond(s) on file with the FMC as required by law and regulation.

If status is #3 above, Merchant certifies that any such NVOCC's have tariff(s) and bond(s) on file with the FMC in full compliance with FMC regulations and that copies of tariff pages reflecting same have been provided to Carrier.

Applicable Boilerplate: 101NVO1

## SERVICE CONTRACT NO. WB03/0329

ESSENTIAL TERMS PUBLICATION:
ESSENTIAL TERMS NO.

SERVICE CONTRACT TARIFF FMC NO.20
ET. NO. WB03/0329
TARIFFS OF GENERAL APPLICABILITY:
APL FMC NO. AP1

This Service Contract ("Contract") is made and concluded by and between APL, ("Carrier") and Merchant and each of its affiliates identified herein (each and collectively referred to herein as "Merchant"), whereby the parties mutually agree as set forth in pages attached hereto.

In the event this Contract is signed on behalf of the Merchant by an agent, the undersigned agent warrants that 1) it is authorized and empowered by the Merchant to negotiate and enter into this Contract on behalf of the Merchant, 2) it is authorized and empowered to represent and act on behalf of the Merchant in respect to all activities undertaken within the scope of this Contract or related thereto, including the booking, carriage and handling of cargo and payment of freight and other charges, and 3) all representations made in this Contract regarding the Merchant's status as a shipper are true and correct.

Carrier

Merchant

_____

(Signature)    Date: 10/31/03
Name: Bruce Joder
Title: Manager, Americas Reefer Trade

APL Co. Pte Ltd. In its Individual Capacity and
as Agent for American President Lines Ltd.
1111 Broadway
Oakland, CA, 94607

_____

(Signature)    Date: 10/30/03
Name: Yimi Ma
Title: Export Manager

JMC Transport Corp.
811 W. Arbor Vitae St.
1st Floor
Inglewood, CA, 90301
Tel No: (310) 216-2069
Fax No: (310) 216-2703  632-6782
Email Address: jmclax@pacbell.net
Customer Number: 374528

Affiliates of Merchant covered by this contract:
None

### Shipper Certification

Pursuant to FMC regulation 46 C.F.R. 530.6, Merchant, by execution of this Contract, certifies its status and that of all its affiliates authorized to utilize this contract as:

(1) _____ THE OWNER OF THE CARGO
(2) _____ MEMBER OF A SHIPPERS' ASSOCIATION
(3) _X_ NON-VESSEL-OPERATING COMMON CARRIER
(4) _____ OTHER (Specify:_____)

If status is #2 above, Merchant certifies that any named members in this contract who are NVOCCs are so identified and that they have tariff(s) and bond(s) on file with the FMC as required by law and regulation.

If status is #3 above, Merchant certifies that any such NVOCC's have tariff(s) and bond(s) on file with the FMC in full compliance with FMC regulations and that copies of tariff pages reflecting same have been provided to Carrier.

Applicable Boilerplate: 101NVO1

AP E Service Contract WB03/0329

## SERVICE CONTRACT - SC NO. WB03/0329

**Table Of Contents**

Appendix B - TransPacific Westbound........................................................................................................................................7
Appendix A - TransPacific Eastbound (reserved)
Appendix C - TransAtlantic Eastbound (reserved)
Appendix D - TransAtlantic Westbound (reserved)
Appendix E - Latin America Northbound (reserved)
Appendix F - Latin America Southbound (reserved)
Appendix G - Asia/Europe (reserved)
Appendix H - Europe/Asia (reserved)
Appendix I - Intra Asia (reserved)
Appendix J - Latin America - Eastbound, Westbound, Intra Latin (reserved)
Appendix K - Intra Europe (reserved)
Appendix Affiliates (reserved)

*ersion April 14, 2003* 101NVO1

## SERVICE CONTRACT

### 1. APPLICATION OF CONTRACT

(a) This contract applies with respect to the transportation of Merchant's commodities listed in the appendix attached hereto (the "Appendix") between the origin and destination locations listed in the Appendix. This contract, its appendices and exhibits thereto, together with the terms and conditions of Carrier's bill(s) of lading and tariffs (to the extent applicable after giving effect to this Contract and exhibits referenced herein) embodies the entire understanding between the parties. There are no other agreements, understandings, conditions, warranties or representations, oral or written, express or implied, with reference to the subject matter of this Contract, which are integrated herein. No modification hereof shall be of any force or effect unless reduced to writing making reference to this Contract and executed by the parties and duly filed with the U.S. Federal Maritime Commission. In the event of any conflict among the terms and conditions of this Contract, the bill(s) of lading and the Carrier's applicable tariff(s), the order of governance shall be, first, the bill(s) of lading, second, this service contract, and third, the tariff(s).

(b) For purposes of determining when a shipment is made during the term of this contract, the date when the shipment is received by the Carrier or its agent shall govern. A shipment shall not be considered as "received" until the full bill of lading quantity has been received.

(c) Merchant represents it is authorized and empowered to enter into this service contract by and on behalf of each and every affiliate identified on the attached schedule, if any, and to represent such affiliates in all matters relating to carriage of cargo tendered hereunder.

(d) For all cargo movements hereunder from or to the People's Republic of China, Japan, Taiwan and Mexico, the term "Carrier" shall refer to American President Lines, Ltd., a Delaware USA corporation. For cargo movements from or to all other locations, the term "Carrier" shall refer to APL Co. Pte Ltd, a Singapore corporation. APL Co. Pte Ltd hereby assumes the obligations, if any, of American President Lines, Ltd. under paragraph 6 below, including the obligation to pay liquidated damages under subparagraph 6(b).

### 2. EFFECTIVE DATE AND TERM

(a) This service contract shall become effective as of the date specified on page 1 hereof, or that date on which it is fully executed and filed with the US Federal Maritime Commission, whichever is later. It shall continue in effect until the expiration date, or lapse of the period, specified in the Appendix.

(b) Carrier may, at any time after Merchant has met the Minimum Volume Commitment ("MVC") set forth in Appendix to the Contract, terminate this Contract, on thirty (30) calendar days written notice to Merchant.

### 3. MINIMUM VOLUME COMMITMENT; DEAD FREIGHT; BOOKING

(a) Merchant shall tender not less than the MVC during the term hereof. Shipments shall be deemed within the scope of this contract and shall be counted toward the MVC if made by Merchant's parent, subsidiary, or other affiliated companies or entities under common control, or by an authorized agent in behalf of any such entity, all of which entities must be identified on signature page or Appendix. Merchant shall remain responsible to carrier for all obligations of non merchant parties shipping cargo under this Contract.

(b) If Merchant fails to tender shipments in sufficient quantity to meet Merchant's undertaking as set forth in the foregoing paragraph (a), Merchant shall, within 30 calendar days of receipt of Carrier's invoice therefore, pay deadfreight in the amount of $350 for each FEU by which the Minimum Volume Commitment exceeds the volume actually tendered.

(c) No volume shipped under this contract shall apply toward any time/revenue or time/volume requirement of any freight tariff or other service contract published by or on behalf of Carrier.

(d) Merchant shall book its space requirements for shipments tendered under this contract not less than 7 calendar days prior to the scheduled arrival of the Carrier's vessel at port of loading. If the shipments are offered upon less than 7 calendar days' notice, Carrier may accept such shipments, which shall then count toward the MVC or decline the shipments, at its option.

4. DISPUTES

(a) Any and all disputes arising out of or in connection with this Contract, including any failure by the Merchant to pay or by the Carrier to perform as required hereunder, shall be resolved by arbitration in San Francisco, California, or such other place as the parties to the dispute may mutually agree under the rules of the American Arbitration Association. The arbitration shall be before a single arbitrator to be appointed by the parties to the dispute or, failing such agreement and upon the application of any party to the dispute, by the American Arbitration Association. There shall be no restrictions on the nationality of the arbitrator. Except by agreement of the parties to the dispute, there shall be no prehearing discovery. The costs and expenses of the arbitration (including reasonable attorney's fees and costs) shall be borne by the non-prevailing party. The decision of the arbitrator shall be final, binding and not subject to further review.

(b) The decision of the arbitrator may be enforced by any court, tribunal or other forum as may properly assert jurisdiction. The parties hereto expressly consent and agree that the United States District Court for the Northern District of California has personal jurisdiction.

5. RATES and CHARGES

(a) Carrier shall assess the freight rates and charges set forth or referenced in the Appendix to all of the Merchant's shipments tendered under this contract.

(b) Except to the extent that the freight rates set forth in the Appendix expressly include or are not subject to other charges, all of the items contained in the Tariff(s) listed in the Appendix shall apply to and govern shipments tendered under this contract, including but not limited to: bunker fuel, currency exchange and other surcharges, and all arbitraries, storage, containerized cargo demurrage, equipment detention, and all other charges, together with all additions, deletions or modifications thereof, all Tariff rules and provisions, and all supplements thereto and reissues thereof.

(c) If at any time during the term of this service contract an increase in the applicable charges or surcharges provided in the Tariff occurs, which would otherwise apply to Merchant's shipments in the absence of this service contract, the charges or surcharges specified or incorporated by reference in the Appendix shall be increased as of the same date it becomes effective in the Tariff.

(d) If at anytime during the term of this service contract a General Rate Increase (GRI) or an increase in a specific commodity rate occurs in the Tariff, which would otherwise apply to Merchant's shipments in the absence of a service contract, then the GRI or commodity rate increase shall be added to and included in the rates and charges set forth or incorporated by reference in the Appendix, as of the same date it becomes effective in the Tariff.

6. SERVICE; CARRIER LIABILITY

(a) In consideration for Merchant's MVC, Carrier shall provide container equipment for booked shipments and shall accept each shipment timely offered by Merchant in order to meet Merchant's MVC; provided that carrier shall have no obligation with respect to cargo tendered in excess of an amount equal to 10% of the annualized MVC during any of the sequential 30 day periods covered by this Contract, the first of which commences with the effective date of the Contract. For purposes of this contract, "timely offered" shall mean shipments booked pursuant to the minimum notice provision of clause 3 (d).

(b) In the event that Carrier fails to provide container equipment, or fails to accept each shipment timely offered, within Merchant's MVC, the MVC shall be reduced by the volume tendered, except as provided in paragraph (a) above, but not carried or container equipment not supplied in order to meet Merchants MVC. Further, if Carrier fails to perform its service obligations set forth in paragraph (a) above, the parties acknowledge that Merchant may suffer commercial damages which are difficult to

predict. Accordingly, the Carrier shall pay liquidated damages in the amount of US$350 per FEU by which Carrier's service failure results in carriage of less than the MVC; provided however, the MVC for the Carrier shall not be reduced by any FEU by which the Merchant's obligation to tender the MVC was reduced due to Carrier service failures.

(c) Carrier undertakes to provide the services and remedies identified in paragraph (a) and (b) above. Carrier does not undertake to perform Merchant's requirements for ocean transportation or to supply container equipment other than on a mutually agreed, space-available basis after Carrier's receipt and transportation of Merchant's MVC or during a period when no MVC is expressly provided.

(d) Except as expressly set forth in this paragraph 6, shipments under this contract shall be subject to all of the terms and conditions of Carrier's bill of lading in effect at the time of shipment and Carrier's liability for cargo loss, damage, delay, misdelivery or other breach of the contract of carriage, if any, shall be determined exclusively under the terms and conditions of the bill of lading.

## 7. FORCE MAJEURE

If Merchant is prevented from tendering the MVC or if Carrier is prevented from performing its service undertaking as set forth in paragraph 6 above as the result of a condition or cause beyond its control, including but not limited to, labor disputes, embargoes, casualties (whether or not the negligent acts or omissions or fault of a party contributed thereto), acts of God, civil disturbances, act or default of the other party and restraint of laws or governments, but excluding loss of market or other commercial contingencies, such failure to perform by suppliers or contractors shall be excused to that extent but no further. The party claiming excused performance shall promptly, but in any event within 7 working days, notify the other at the time of commencement and termination of an event excusing its performance, together with a statement estimating the effect of such event on its ability to perform. If an event wholly or partially preventing the performance of a party shall continue for more than 30 calendar days, either party may terminate this Contract upon delivery of written notice of termination.

## 8. COMPENSATION and PAYMENT of FREIGHT and CHARGES

Carrier's freight charges computed in accordance with the Appendix, demurrage, detention, surcharges, arbitraries, and all other charges applicable under the Tariff and this contract shall be paid in strict accordance with the Tariff and bill of lading before the release of the shipments on which charges accrued, or, in the case of prepaid shipments under negotiable bills of lading, before release of the original bills of lading.

## 9. SHIPMENT RECORDS

The shipment records required to be maintained under 46 CFR Section 530.15 shall consist of copies of Merchant's bills of lading, or computer generated bills of lading, any force majeure correspondence and notices, and any correspondence concerning Merchant's or Carrier's failure to perform which affects Merchant's entitlement to the contract rates, all of which shall be maintained by Carrier at its offices. Upon request from Carrier, Merchant shall promptly submit to the Carrier information and documents sufficient to verify the quantity and nature of cargo shipped under this contract. Shipping documents provided by Merchant governing individual shipments under this contract and all copies thereof shall bear a notation showing the service contract number of this contract. The designation by Merchant of cargo as contract cargo by affixing the contract number on the shipping documents provided by Merchant shall be made at the time of the issuance of the bill of lading and shall be conclusive.

The Merchant, and the Carrier, shall cooperate in maintaining shipment records documents and reports as they may from time to time mutually determine to be administratively desirable. The person who will respond to requests on behalf of the Carrier to make shipping records available to FMC is the Carrier's Tariff Publishing Officer, 1111 Broadway, Oakland, CA 94607, Telephone No. (510) 272-8033.

## 10. MANIFESTING NVOCCS

The provisions of this paragraph 10 shall apply whenever (1) the Merchant is an non-vessel operating common carrier within the meaning of 19 C.F.R. § 4.7, *et seq.*; (2) Merchant has elected to electronically manifest its USA-related cargo directly with US Customs by way of the Vessel Automated Manifest System ("AMS"); and (3) Merchant has notified Carrier of Merchant's intention to manifest its cargo in this fashion.

APL Service Contract N600-0026

(a) Merchant warrants and represents that it has elected to electronically submit manifest information directly to US Customs via AMS, and that it is qualified to submit manifest information via AMS under applicable US Customs regulations.

(b) Merchant further warrants and represents that it shall comply with all applicable US Customs and other regulations and applicable law in respect to submitting manifests, including but not limited to the obligation to file accurate and complete information in a timely manner.

(c) Merchant further undertakes, warrants and agrees that it shall comply with Carrier's policies and procedures in respect to booking, communications, equipment management and EDI, as more specifically spelled out in the APL/NVOCC Coordination Guidelines, which are incorporated herein by this reference.

(d) Merchant further undertakes, warrants and represents that it shall immediately communicate to Carrier's designated representative hold orders it receives from US Customs in respect to Merchant's Shipments. Merchant and Carrier shall diligently cooperate with each other in complying with hold orders pertaining to Merchant's Shipments, providing necessary information to each other and US Customs, and otherwise assuring prompt and full compliance with related instructions received from US Customs.

(e) Merchant agrees it shall indemnify, defend and hold Carrier harmless for and against any and all fines, penalties, liabilities, claims, costs, damages, attorneys fees or demands of any kind whatsoever without limitation (collectively "Damages," as further defined below), that may arise as a result of or are materially related to: (i) its failure to meet its obligations and undertakings under this Agreement, (ii) any act, error or omission in respect to manifesting Cargo via the AMS system by Merchant, (iii) cargo manifested in the AMS system by Merchant, and/or (iv) its improper notification or failure to notify Carrier of a hold or other US Customs' order (hereafter separately and collectively "Indemnity Event(s)"). This obligation shall apply strictly and without regard to whether Merchant acted or failed to act intentionally, negligently or otherwise. Merchant shall pay to Carrier any and all Damages that Carrier has or will suffer, pay or be obligated to pay by reason of any such Indemnity Event. The foregoing duty to indemnify Carrier shall not apply to Damages caused by the negligence of the Carrier. "Damages" include but are not limited to all costs associated with complying with government orders as further identified in Rules 49 and 53 of the APL AP1 General Rules Tariff. Nothing in this paragraph 10 shall reduce, alter or prejudice the respective indemnity obligations of the Parties, if any, that may arise elsewhere in this Contract, under any bills of lading issued hereunder, or under any applicable Carrier tariff(s).

(f) Carrier agrees it shall indemnify, defend and hold Merchant harmless for and against any and all fines or penalties imposed on Merchant by US Customs as a result of Carrier's negligent act or omission. In the event of comparative fault of the Merchant, liability under this subparagraph (f) shall be allocated in proportion to the respective fault of the parties.

APPENDIX B

SERVICE CONTRACT No: WB03/0329

1. **ORIGIN:**
   UNITED STATES

2. **DESTINATION:**
   TAIWAN

3. **COMMODITIES:**
   A. Pork, Frozen

4. **MINIMUM VOLUME COMMITMENT:**
   25 FEU

5. **SERVICE COMMITMENTS:**
   The service commitment applicable hereto is that set forth in Paragraph 6 of this contract.

6. **CONTRACT RATES:**
Rates in USD unless otherwise noted. Rates subject to applicable arbitraries, outports and inland charges as specified in applicable tariff unless otherwise noted in paragraph 6 and 10 of this appendix.

   **Pork, Frozen**
   **Kansas City, KS (CY)**

   | Destination | Dlv Md | R40 |
   | --- | --- | --- |
   | Keelung, Taiwan | CY | 4050 |

7. **LIQUIDATED DAMAGES:**
   The liquidated damages for non-performance hereunder are set forth in Paragraphs 3 (b) and 6 (b) of this contract.

8. **EXPIRATION DATE OR PERIOD OF TERM:**

   | | |
   | --- | --- |
   | Commencement: | Oct 31, 2003 |
   | Effective through: | Oct 30, 2004 |

9. **SIGNATURE**
   See Signature Page

10. **ASSESSORIALS**
a) The contract rates set out in paragraph 6 are inclusive of the following extra charges where applicable:
None

b) The contract rates set out in paragraph 6 are not subject to the following extra charges where applicable:
   **1. Terminal Handling Origin(THC)**

   **2. Currency Adjustment Factor(CAF)**

   **3. Alameda Corridor Charge(CDR)**

   **4. Chassis Charge(CHS)**

c) The following extra charges shall apply during the term of this contract:

All other charges not listed above shall apply pursuant to Paragraph 5 (b) of this contract.

## 101 BOILER PLATE
101NVO1  applies

# EXHIBIT B

# INVOICE

AMERICAN PRESIDENT LINES, LTD.

| | INVOICE | COGMD3K526 |
|---|---|---|

| Customer # | Currency | Invoice Description | Invoice Date | Revenue Acct#/C C |
|---|---|---|---|---|
| COGJMCTRAN | US$ | DEAD FREIGHT | 3/2/2005 | 33202131 |
| | | | | 9771999 |

JMC TRANSPORT CORP.
811 W. ARBOR VITAE ST., 1ST FLR.
INGLEWOOD, CA. 90301
ATTN: ACCOUNTS PAYABLE

*Please reference our invoice number
and make check payable to:*
AMERICAN PRESIDENT LINES, LTD
116 INVERNESS DR. EAST, STE 400
ENGLEWOOD, CO 80112

ATTN: FREIGHT CASHIER

| Description | | Unit Count | Unit Price | Amount |
|---|---|---|---|---|
| Service Contract No | WB03/0329 | | | |
| MQC: | 25 | | | |
| FEUs Shipped: | 0 | | | |
| FEUs Short: | 25 | | | |
| Dead Freight per FEU: | 350.00 | 25 | $350.00 | $8,750.00 |
| | | | | |
| Amount Due    $ | 8,750.00 | | | |
| | | | | |
| *PAYMENT DUE UPON RECEIPT* | | | Invoice Total | $    8,750.00 |

| *PAYMENT DUE UPON RECEIPT* | Invoice Number | COGMD3K526 |
|---|---|---|

| Customer # | Customer Name | Rec. Type | Invoice Date | Amount Due |
|---|---|---|---|---|
| COGJMCTRAN | JMC TRANSPORT CORP. | RDFT | 3/2/2005 | $    8,750.00 |

Make checks payable and remit to:
AMERICAN PRESIDENT LINES, LTD
116 INVERNESS DR. EAST, STE 400
ENGLEWOOD, CO 80112

ATTN: FREIGHT CASHIER

# EXHIBIT C

AMERICAN ARBITRATION ASSOCIATION

COMMERCIAL ARBITRATION TRIBUNAL

AMERICAN PRESIDENT LINES, LTD.
and APL CO. PTE. LTD.

Claimants,

v.

J.M.C. TRANSPORT CORPORATION,

Respondent.

No. 74 125 E 00845 07 VIAM

**AWARD**

I, THE UNDERSIGNED ARBITRATOR, having been designated in

accordance with the arbitration agreement contained in Service Contract No.

WB03/0329 between the above-referenced Claimants and Respondent; and

having been duly sworn, and having duly heard the proofs and allegations of

Claimants; and Respondent having failed to appear after due notice in

accordance with the Commercial Arbitration Rules of the American Arbitration

Association, do hereby issue this Award.

This matter was heard on the basis of written materials submitted by

Claimants on or about September 14, 2007, pursuant to a scheduling order dated

August 27, 2007.  Claimants were represented by Mark K. de Langis, Esq. of

Lucas Valley Law.  Respondent did not appear, despite having been given full

and adequate notice of the preliminary hearing, the scheduling order and the

opportunity to defend the claims as set forth in the scheduling order by

requesting a live hearing by September 10, 2007, or submitting written materials

/4 125 E 00845 07 VIAM

on or before October 5, 2007 (no such request was made, and no such
submissions were filed).

Based on the arguments and evidence presented in Claimants' written
submission, which I have analyzed for admissibility and proof, I make the
following award in full resolution of all claims and defenses presented in this
arbitration:

1.   Respondent shall pay Claimants the sum of Eight Thousand Seven
     Hundred Fifty Dollars ($8,750.00) in liquidated damages (also
     known as dead freight fees) due under the Service Contract, in light
     of Respondent's failure to meet the Minimum Volume Commitment
     set forth in that contract.

2.   Also pursuant to the contract, Respondent shall pay Claimants the
     sum of Two Thousand One Hundred Sixty Dollars ($2,160.00) in
     reimbursement of Claimants' reasonable attorney's fees and
     related costs incurred in connection with this arbitration.

3.   The administrative fees of the American Arbitration Association
     ("the Association") totaling $750.00, and the compensation of the
     arbitrator totaling $950.00, shall be borne by Respondent.
     Therefore, Respondent shall pay to Claimant the additional sum of
     One Thousand Seven Hundred Dollars and No Cents ($1,700.00)
     representing Claimants' share of amounts previously advanced to
     the Association.

2

74 125 E 00845 07 VIAM

4.    All amounts due under the Award shall bear interest at the legal
rate from the date of this Award until the date all such amounts are
paid in full.

This Award is in full settlement of all claims and defenses presented in this
arbitration, and all claims not expressly granted herein are hereby denied.

The parties are hereby advised that the policy of the undersigned
Arbitrator is to destroy (usually by recycling) all documents submitted in
connection with any arbitration ninety (90) days following the date of the award,
which is set forth below, unless one of the parties requests return of their file
materials, in writing, before the expiration of this ninety-day period.

Dated:  October 16, 2007

Matthew J. Geyer, Arbitrator